IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

UNITED STATES OF AMERICA   :
                           :      CRIMINAL CASE
            v.             :
                           :      No. 1:12-CR-311 (AT)(JSA)
MLADEN MITROVIC            :
_____    :

MOTION TO ALLOW TESTIMONY OF
UNAVAILABLE WITNESSES

Comes now, MLADEN MITROVIC, Defendant in the above-styled action, by
and through undersigned counsel and hereby moves this Court to all him to present
the testimony of unavailable witnesses.  In support of this Motion, Mr. Mitrovic
shows as follows:

(1)

Mr. Mitrovic is the lone defendant named in a single count indictment charging
him with providing false and fraudulent information as to material facts in applying
for naturalization when he (1) "represented he never persecuted any person because
of race, religion, national origin . . . (2) given false or misleading information to any
U.S. government official while applying for any immigration benefit; and (3) lied to
any U.S. government official to gain entry or admission into the United States."

(2)

Upon information and belief, the government's theory will be that Mr. Mitrovic was a guard at a prison camp in Bosnia during the conflict and that he committed acts of torture and/or killings.

(3)

Further, upon information and belief, it will be the government's theory that Mr. Mitrovic's answers to questions pertaining to his military service and to whether he committed crimes (including those of moral turpitude) that he was not prosecuted for were false.

(4)

All of the questions he is alleged to have answered falsely pertain to the accusation he was a guard at the camp, a charge he denies.

(5)

It is anticipated the government will call a number of witnesses who will testify they were prisoners in the camp and that they saw Mr. Mitrovic operating as a high ranking guard therein.

(6)

Further, it is anticipated some of the government's witnesses will testify that while there they observed Mr. Mitrovic commit acts of torture and abuse based on race, religion or national origin.

(7)

As the Court is aware, counsel for Mr. Mitrovic has traveled to Bosnia to investigate the case and in that investigation has discovered a number of witnesses who would testify they were prisoners in the camp but they did not see Mr. Mitrovic there in any capacity.

(8)

When counsel for Mr. Mitrovic traveled to Bosnia in November of 2015 to conduct depositions of witnesses there, a number of witnesses who, while reaffirming what they had said earlier, refused to testify for fear of reprisals within the community.

(9)

As the Court is also aware, because of treaties and international law, Mr. Mitrovic was without the authority to compel these witnesses to attend the depositions, thus their exculpatory testimony is not preserved for use at the upcoming trial.

(10)

Mr. Mitrovic asks this Court to allow him to present testimony of those who interviewed these witnesses so that the jury may hear their reliable exculpatory stories.

(11)

The following is a summary of what the Bosnian witnesses had previously said:

**Denzila Besic**: was in the Trnopolje camp on two different occasions for a total of 18 days; people were allowed to leave the camp if there were family or friends nearby; when shown various photographs from Mr. Mitrovic's A-file she said she did not recognize him as being a guard at the camp.

**Fatka Besic**: was in the Trnopolje camp for two months and 24 days beginning on May 24, 1992; she was shown photographs from Mr. Mitrovic's A-File and did not recongize him as being a guard at the camp.

**Asim Dzamastagic**: was in the Trnopolje camp from July 20 to July 28, 1992; he was shown photographs from Mr. Mitrovic's A-File and did not recognize him as being a guard at the camp.

**Tima Dzamastagic***: (Asim's wife) was in the Trnopolje from July 20 to July 28, 1992; was shown photographs from Mr. Mitrovic's A-File and did not recognize him as being a guard at the camp.

**Hamdija Cirkin**: was in the Trnopolje camp for ten days; when he was released, he continued to return to the camp to bring food for those who remained inside; was shown photographs from Mr. Mitrovic's A-File and did not recognize him as being a guard at the camp.

**Sabahudin Garibovic**: he is the current president of a "survivors club" in Kosorac and was a survivor of the "cliffs massacre" where more than two hundred prisoner's en route from the camp at Trnopolje were taken by a special response team of the Public Security Center of Prijedor to the Koriciani Cliffs where they were lined up and shot, with the bodies falling into the ravine; h spent 88 days in the camp at Trnopolje and was twice beaten while there; he was shown various photographs from Mr. Mitrovic's A-File and did not recognize him as being a guard at the camp; he initially agreed to be deposed but when re-interviewed just prior to the depositions he refused saying that he would loose people's

trust, friendship and respect if it was perceived he said anything that could help a Serb.

**Sedat Islamovski**: he is the brother of Sevdat Islamovski who was deposed; he was transferred to Trnopolje from Keratem in August of 1992 and was there until it closed; he was shown various photographs from Mr. Mitrovic's A-File and could not identify him as being a guard at the camp; he originally agreed to be deposed but immediately before the taking of depositions he refused saying he was frightened of what other people might doe to him if they knew he testified on behalf of a Serb.

**Zilhad Jakopovic**: he was in Trnopolje the entire time the camp was in operation; he was interrogated repeatedly by the guards; he did not recognize the name Mladen Mitrovic and did not recognize any of the photos from Mr. Mitrovic's A-File as being someone who was a guard at the camp.

**Salih Kenjar**: he was in Trnopolje for 60 days (6/15/92 - 8/30/92); he was shown various photographs from Mr. Mitrovic's A-File and did not recognize him as being a guard at the camp.

**Ildana Turkanovic**: she and her son were in Trnopolje for three weeks; she was shown various photographs from Mr. Mitrovic's A-File and could not identify him as being a guard at the camp.

## ARGUMENT AND AUTHORITY

Federal Rule of Evidence 801 defines "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidenced to prove the matter of the asserted statement." The Rules also provide that hearsay statements are not "admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." F.R.E. 802. Mr. Mitrovic acknowledges that allowing others to

testify to what the Bosnian witnesses had previously said would constitute "hearsay" but believes the Rules of Evidence as well as rules prescribed by the Supreme Court permit (even compel) this Court to allow such testimony.

### A.   Federal Rule of Evidence 807 Allows for the Admission

F.R.E. 807 provides:

> (a) In General. Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

>> (1) the statement has equivalent circumstantial guarantees of trustworthiness;
>> (2) it is offered as evidence of a material fact;
>> (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>> (4) admitting it will best serve the purposes of these rules and the interests of justice.

> (b) Notice. The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

The testimony proffered herein meets all of the criteria of F.R.E. 807.

### 1.   The testimony has guarantees of trustworthiness

Each of the above witnesses were interviewed in their home environment. The interviewers identified themselves as working for Mladen Mitrovic, a person who was being prosecuted in the United States. They were informed that he was accused of giving false information during the immigration process and that the government's

theory was that Mr. Mitrovic was a guard at the Trnopolje camp but failed to disclose that fact.  Each witness was of Muslim heritage, and as evidenced by information relayed by Mr. Garibovic and Mr. Islamovski, a Muslim giving aid to someone perceived to be a Serb could lead to repercussions within the Muslim community. Thus, the statements originally given were against the witnesses's interest.  Further, although they refused to be deposed, none of the witnesses ever recanted or retracted their previous statements.

### 2.    The testimony is material

The government's theory of prosecution is that Mr. Mitrovic gave false information when he answered "NO" to questions relating to whether he had ever committed a crime of moral turpitude for which he had not been prosecuted and whether he had ever persecuted someone on the basis of their national origin, religion or race.  The government believes that Mr. Mitrovic, acting as a guard a the Serbian maintained Trnopolje camp, tortured and/or killed people because they were either Croat-Catholic or Bosniak-Muslim.  Each witnesses testimony is relevant to Mr. Mitrovic's defense - - he never served as a guard at the Trnopoloje camp (or any other camp for that matter) and likewise did not torture or kill anyone based on national origin, race or religion.  The government is expected to present the testimony of a number of people who will say Mr. Mitrovic was a guard at the camp and the

proffered testimony directly contradicts the government witnesses's testimony. Therefore, it is material.

### 3.   There is no alternative means of obtaining the testimony

The testimony is unquestionably probative and there is no other means by which Mr. Mitrovic can present this testimony at trial.  As the Court is aware, through the letters rogatory process, counsel for the parties were informed that if depositions were to be taken, the witnesses had to do so voluntarily and no hint of coercion or compulsion could be asserted.  Each witness originally agreed to be deposed, but when the time came, either could not be located or refused.

### 4.   The interest of justice compels admission

A fundamental principle of American jurisprudence is a criminal defendant has the right to present a defense.  *Washington v. Texas*, 388 U.S. 14, 19 (1967 ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  This right is a fundamental element of due process of law.").  Here, Mr. Mitrovic does not have the power of compulsory process and can only present clearly relevant, highly probative material evidence via hearsay

testimony.  Without the proffered testimony, Mr. Mitrovic will effectively be denied the opportunity to defend himself.  Further, the government's interest in the instant prosecution is first and foremost to seek justice.  *See Connick v. Thompson*, 563 U.S. 51, 65 (2011) ("Prosecutors have a special duty to seek justice, not merely to convict.").  The prosecution should have no objection to allowing, trustworthy, relevant and material evidence to be placed before a jury so that the jury may make the ultimate determination of what is the truth.  This is the process by which the American justice system has determined justice is to be served.

> **B.  The testimony is admissible pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973)**

Similar to the Rule announced in F.R.E. 807, the Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S. 284 (1973) allows for the introduction of hearsay testimony where there is indicia of reliability of out-of-court statements.  The Court noted that "[f]ew rights are more fundamental that that of an accused to present witnesses in his own defense."  *Id*. at 302.  The Court noted that the statements proffered in that case were against penal interest (an exception not then recognized by the Mississippi rules of evidence) which, reasoned, the Court, provided "assurance of their reliability."  *Id*. at 301.  Given those assurances of reliability, the Court held "where constitutional rights directly affecting the ascertaining of guilt are implicated,

the hearsay rule may not be applied mechanistically to defeat the ends of justice.  *Id.*
at 302.

The statements in the instant case are shrouded with the same assurances of
reliability.  As noted above, all of the declarants are Muslim and any statement by a
Muslim that is perceived to assist a Serb (which they believe Mr. Mitrovic to be)
would be against that individual's interest and subject them to community
repercussions.  Further, the statements here, like the statements in *Chambers* are
essential to the defense.  *See above*.  Thus, this Court should allow Mr. Mitrovic to
present the statements regardless of the rule against hearsay.

WHEREFORE, this Court should allow Mr. Mitrovic to present Jordan Dayan
and Leah Quinn as witnesses who will relate to the jury the statements made by the
above-listed Bosnian witnesses .

Dated, this the 2nd  day of April, 2016.

Respectfully submitted,


_s/Jeffrey L. Ertel_____
JEFFREY L. ERTEL

_/s/Molly Parmer_____
MOLLY PARMER

Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, GA 30303
(404)688-7530

COUNSEL FOR MR. MITROVIC

CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Local Rule 5.1, the forgoing is formatted in Times New Roman, 14 Point, electronically filed and electronically served upon counsel for the Government:

> Ms. Jessica Morris, Esq.
> Mr. Will Traynor, Esq.
> Ms. Christina Giffin, Esq.
> United States Attorney's Office
> 600 Richard B. Russell Bldg.
> 75 Ted Turner Drive, S.W.
> Atlanta, Georgia 30303

Dated, this the 2nd day of April, 2016.

> *s/Jeffrey L. Ertel*
> Jeffrey L. Ertel

WHEREFORE, Mr. Mitrovic respectfully requests this Court order the Government to provide what answers/information constituted providing "false or misleading information to a U.S. government official while applying for immigration benefits" and what answers/information constituted a lie "to any U.S. governmental official to gain entry or admission into the United States."

Dated, this the 15th day of April, 2016.

Respectfully submitted,

*s/Jeffrey L. Ertel*
JEFFREY L. ERTEL

*s/Lindsay Bennett*
LINDSAY BENNETT

Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, GA 30303
(404)688-7530

COUNSEL FOR MR. MITROVIC

CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Local Rule 5.1, the forgoing is formatted in Times New Roman, 14 Point, electronically filed and electronically served upon counsel for the Government:

>       Ms. Jessica Morris, Esq.
>       Mr. Matthew Singer, Esq.
>       United States Attorney's Office
>       600 Richard B. Russell Bldg.
>       75 Spring Street
>       Atlanta, Georgia 30303

Dated, this the 15th day of April, 2014.


_s/Jeffrey L. Ertel_____