**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MLADEN MITROVIC, | : | MOTION TO VACATE |
| Fed. Reg. No. 64122-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:12-CR-311-AT-JSA |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:19-CV-1050-AT-JSA |

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Mladen Mitrovic has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255. (Doc. 335). Movant seeks to challenge the constitutionality of his September 7, 2016, conviction and sentence in the Northern District of Georgia.

I.   Background

A.   Historical And Factual Background

The Eleventh Circuit provided this historical background:

In the early 1990s, the former Yugoslavia broke apart into its constituent republics, which mostly were divided along ethnic lines. Bosnia and Herzegovina, one such republic, declared independence in March, 1992. Unlike the other republics, Bosnia was not dominated by a single ethnicity and instead was comprised of approximately forty percent Bosniaks, thirty percent Serbs, and twenty percent Croats. These ethnicities were divided by religious affiliations: Bosniaks were Muslim, Serbs were Eastern Orthodox Christian, and Croats were Catholic. Serbian nationalists did not want to be a part of a multi-ethnic state and sought to carve out their own Serbian dominated state— known as *Republika Srpska*. This area contained the region, and city, of Prijedor.

The Serbs organized their own army, the VRS, [FN1: The acronym "VRS" comes from *Vojska Republike Srpske*. This military outfit is also referred to as the Bosnian Serb Army ("BSA").] and began ethnic cleansing across the Prijedor region. The VRS was comprised mainly of Serbs, but non-Serbs, such as Mitrovic, could serve to demonstrate their loyalty. Non-Serbs who were not killed were taken prisoner and sent to various prison camps, including one in Trnopolje, approximately ten kilometers from the city of Prijedor. The government contends that Mitrovic was a guard at the Trnopolje camp. Mitrovic argues that he was not a guard, but was conscripted into forced labor during the Bosnian conflict.

On November 20, 1996, United States immigration officials interviewed Mitrovic regarding his I-590 refugee application. On this application, and reaffirmed during his interview, Mitrovic stated that his only prior military service was as a cook in the Yugoslavian army from 1980 to 1982. Based on his answers, Mitrovic was given refugee status and admitted to the United States.

Later, Mitrovic applied for United States citizenship and on October 3, 2002, he was approved for naturalization as a U.S. citizen. On his application and in his interview, Mitrovic asserted that he had never persecuted anyone on account of their race, religion, national origin, membership in a particular social group, or political opinion. However, the government contends that because Mitrovic was a guard who beat prisoners at the Trnopolje prison camp, his answers given on both the refugee and naturalization applications were false. He was charged via a superseding indictment on November 18, 2014, pleaded not guilty, and went to trial.

*United States v. Mitrovic*, 890 F.3d 1217, 1219 (11th Cir. 2018). *See also*

Presentence Investigation Report ("PSR") at ¶¶5-16.

2

B.     Procedural Background[1]

Movant was charged in both the indictment and superseding indictment with obtaining, procuring, and applying for his naturalized American citizenship on October 3, 2002, by fraud, in violation of 18 U.S.C. §1425(b) and 8 U.S.C. §1451(e). (Docs. 1, 104).  Specifically, the superseding indictment charged that in procuring and obtaining his citizenship, Movant falsely represented that he never:  (1) persecuted any person because of race, religion, national origin, membership in a particular social group, or political opinion; (2) gave false or misleading information to any United States government official while applying for any immigration benefit; and/or (3) lied to any United States government official to gain entry or admission into the United States.  (Doc. 104).  It also charged him with falsely representing that he had never committed a crime or offense for which he was not arrested.  (*Id.*).

After Movant was indicted, Movant's defense attorneys travelled to Bosnia and interviewed people who had material information, but those witnesses refused to voluntarily testify at trial and were outside the subpoena power of the United States.  *Id.*  Based thereon, Movant filed a motion to depose those witnesses pursuant to Fed. R. Crim. Pro. 15 and sought permission from the Bosnian government to do so.  *Id.*  Before leaving for Bosnia, Movant's counsel called the witnesses who

---

[1]     For ease of reference and discussion, the undersigned will refer to the procedural history as set forth in the Eleventh Circuit's decision.

3

reaffirmed that they were willing to be deposed; however, once Movant's attorneys arrived in Bosnia several of them refused to do so. *Id.* at 1219-20. Most of those witnesses had been in the Trnopolje prison camp for longer than those who were deposed and originally told Movant's attorneys that they did not ever see Mitrovic as a guard at the camp. *Id.* at 1220.

When Movant's defense team returned to the United States, Movant filed a motion to allow the investigator who interviewed the uncooperative witnesses to testify as to what most of the witnesses said during their initial interviews – that they had been at the camp for an extended period and never saw Movant. (Doc. 164); *Mitrovic*, 890 F.3d at 1220. Movant argued that those statements should be excepted from the hearsay rule, or alternatively, should be admissible because their exclusion would deprive Movant of his constitutional right to present a complete defense. (Doc. 164); *Mitrovic*, 890 F.3d at 1220. U.S. District Judge Amy Totenberg denied the motion, however, after finding that the hearsay statements did not have the required indicia of reliability. (Doc. 310 at 7-27; Doc. 312 at 20-23).

The Eleventh Circuit summarized the evidence at trial as follows:

At trial, the government called eleven witnesses: seven were prisoners at the Trnopolje prison camp who claimed to have seen Mitrovic as a guard, several of whom claimed that Mitrovic beat prisoners; two were immigration officers who interviewed Mitrovic as part of the refugee and naturalization process; one was the case agent; and one was an expert on the Bosnian conflict. The government also introduced an application by Mitrovic for veteran's benefits for injuries sustained during the Bosnian conflict, and the Bosnian government's approval of

4

that claim. Once the jury had been excused after the conclusion of the government expert's testimony, Mitrovic requested the court take judicial notice of the Geneva Convention to show that the Bosnian government would not have created a document indicating it conscripted individuals into forced labor, so instead it treated such documents as veteran's benefits. The district court refused, stating that the information would confuse the jury.

During his case, Mitrovic presented five witnesses by deposition who either visited or were prisoners at the camp and never saw Mitrovic there. Unlike many of the witnesses who refused to be deposed, most of these witnesses were only in the camp for short periods. Seven other witnesses testified that they were Mitrovic's neighbors during the time the camp was open. They lived in Prijedor, most saw Mitrovic there often, and never saw him wearing a uniform or carrying a weapon. Additionally, most knew Mitrovic as a Croat Catholic. The defense investigator testified that Mitrovic had identified a number of witnesses in Bosnia who recanted their agreement to be deposed and that Mitrovic lacked the subpoena power to compel them to testify. The jury found Mitrovic guilty.

*Mitrovic*, 890 F.3d at 1220.  Judge Totenberg sentenced Movant to 57 months of imprisonment.  (Docs. 266, 271).

On appeal, Movant raised two claims that the district court erred and violated his constitutional rights, when it:  (1) prevented Movant from presenting the hearsay statements of foreign witnesses who were unable to testify at trial; and (2) refused to take judicial notice of Articles 4 and 40 of the Fourth Geneva Convention.  *Mitrovic*, 890 F.3d at 1218-19.  The Eleventh Circuit affirmed Movant's conviction and sentence on May 23, 2018, *id.* at 1226, and on October 1, 2018, the Supreme Court denied his petition for certiorari.  *Mitrovic v. United States*, __ U.S. __, 139 S. Ct. 267 (Oct. 1, 2018).

Movant executed the instant §2255 motion to vacate his sentence on February 25, 2019, and raises the following grounds for relief:

(1)     the District Court lacked jurisdiction to hear his case because the indictment was filed beyond the ten-year statute of limitations under 18 U.S.C. §3291, and counsel was ineffective for failing to raise that issue;

(2)     Movant received ineffective assistance of counsel when counsel failed to present an expert witness to clarify Bosnia's Signatory Authority concerning the Geneva Convention;

(3)     The Government engaged in several incidents of prosecutorial misconduct and inaccuracy in the trial testimony translation which deprived Movant of his Sixth Amendment right to a fair trial; and

(4)     Movant received ineffective assistance of counsel when counsel failed to argue that the upward departure from the Sentencing Guidelines based on a 2012 amendment thereto violated his *ex post facto* rights.

(Doc. 335).

The Government argues that Movant's §2255 motion should be denied.  For the following reasons, the undersigned **RECOMMENDS** that the instant §2255 motion be **DENIED**.

II.     Standard of Review

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255,

6

individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).   Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims, most of which were fully litigated at trial and on appeal. Thus, no evidentiary hearing is required.  Consequently, Movant's motion for an evidentiary hearing [Doc. 340] is **DENIED**.[2]

---

[2]    In the same motion as his request for an evidentiary hearing, Movant seeks appointment of counsel.  (Doc. 340).  That motion [Doc. 340] is **DENIED AS MOOT**.

III.   <u>Analysis</u>

    A.   <u>Movant Did Not Receive Ineffective Assistance Of Counsel.</u>

        1.   <u>Ineffective Assistance Of Counsel Standard</u>

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim

should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992). *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

2.   Counsel Was Not Ineffective.

Movant claims that counsel was ineffective for:  (1) failing to raise the statute of limitations as a defense; (2) failing to call an expert witness to discuss the Geneva Convention; and (3) failing to argue that Movant's sentence violated the *Ex Post Facto* Clause of the Constitution.

a.   Statute Of Limitations

Under 18 U.S.C. §1425(b), it is unlawful for anyone to, *inter alia*, knowingly issue, procure or obtain, apply for or otherwise attempt to procure or obtain naturalization or citizenship, whether for himself or another person not entitled to do so.  The elements of violating §1425(b) include:  (1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure naturalization or citizenship; (2) the defendant was not entitled to naturalization or citizenship; and (3) the defendant knew that he was not entitled thereto.  *United States v. Moses*, 94 F.3d

9

182, 184 (5th Cir. 1996). *See also United States v. Latchman*, 512 F. App'x 908, 910 (11th Cir. 2013) ("To obtain a conviction on [a §1425(b)] charge, the government had to prove that [the defendant] knowingly procured her United States citizenship without being entitled to it.").

The first element, however, requires different proof for different violations. For example, if someone procured or obtained citizenship for oneself through fraud, proof that he did, in fact, obtain citizenship would be an element of the offense, whereas someone charged with *attempting* to obtain citizenship would not. Likewise, procuring or obtaining citizenship for someone else would require proof of a different element than for oneself. As a result, 18 U.S.C. §1425(b) provides several distinct offenses. *See Blockburger v. United States*, 284 U.S. 299, 303-04 (1932) (stating that a statute creates multiple offenses where each requires proof of a different element or elements).

The statute of limitations for §1425(b) violations is ten years. *See* 18 U.S.C. §3291. The statute of limitations begins to run when the crime is complete, *Toussie v. United States*, 397 U.S. 112, 115 (1970), which plainly would be different for violations of actually procuring or obtaining citizenship, as opposed to applying for, or attempting to apply for, citizenship, through fraud. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Applying both of these principles to

10

§1425(b), the violation for which Movant was charged – applying and obtaining and procuring his naturalized American citizenship on October 3, 2002, by fraud – could not have been complete without having actually procured or obtained any such citizenship.  *See United States v. Swetz*, No. 2:17-cr-00181-APG-CWH, 2019 WL 545005, at *2 (D. Nev. Jan. 2, 2019) ("The alleged crimes of naturalization fraud and passport fraud [under §1425(b)] were not complete until Swetz received the benefit sought by her fraudulent applications, that is, she was naturalized, and received a passport."); *United States v. Kirsteins*, No. 87-CV-964, 1989 WL 49796, at *1, 8) (N.D. N.Y. 1989) (finding where indictment charged the defendant with knowingly procuring and attempting to procure naturalization in violation of §1425(a) and (b), "[h]is crime was not complete until he actually obtained citizenship").[3]  The statute of limitations thus began on October 3, 2002, and the original indictment filed on September 19, 2012, was filed within the ten-year period.  As a result, there would have been no statute of limitations defense, counsel

---

[3]     The *Kirsteins* court cited as support *United States v. Pacchioli*, 718 F.3d 1294 (11th Cir. 2013), for its conclusion that the limitations period began when the defendant obtained citizenship, even though he also was charged with attempting to procure citizenship.  The Eleventh Circuit in *Pacchioli* explained that where an offense could be established through one of three disjunctive acts and the government had charged all three, the statute of limitations would be satisfied if any of the three occurred within the limitations period.  *Id.* at 1300-01.  Likewise, Movant was charged with applying, obtaining, and procuring his naturalization and citizenship through fraud, and the statute of limitations would be satisfied based on when he obtained and/or procured it.

could not have been ineffective for failing to raise any such defense, and Movant has failed to demonstrate that but for counsel's failure to do so the proceeding would have been different.  Movant, therefore, is not entitled to relief in connection with the ineffective assistance portion of Ground 1.[4]

> b.   Failing to Call An Expert Witness

During the trial the Government presented three documents to demonstrate that Movant applied for, and received, benefits for injuries sustained as part of the Bosnian conflict, as well as a certificate recognizing Movant's military service. (Doc. 318 at 54-57).  Movant argued, however, that the government forced him to perform labor, and that the government falsely documented that he was in "military service" because forced labor violates the Geneva Convention.  (Doc. 315 at 54-55; Doc. 316 at 184-89; Doc. 317 at 53-54, 159-60).  *Mitrovic*, 890 F.3d at 1220, 1225. As part of that argument Movant's counsel moved for the Court to take judicial notice of Articles 4 and 40 of the Geneva Convention.  The Court denied Movant's motion because that evidence would have been too confusing for the jury, and it was not clear that those articles of the Geneva Convention would apply to a national civil

---

[4]   To the degree that Movant also raises the actual claim that the district court had no jurisdiction because he was indicted beyond the ten-year statute of limitations, that claim is procedurally defaulted because he did not raise it on appeal and, as discussed in connection with his ineffective assistance claim, the limitations challenge is without merit.

war rather than an international conflict.[5]  (Doc. 232; Doc. 234; Doc. 319 at 106-08);[6] *Mitrovic*, 890 F.3d at 1220, 1225-26.  But the Court nevertheless authorized Movant to attack the veracity of those military documents with his argument that "military service" was code for "forced labor," which he did during cross-examination and in closing arguments.  (Doc. 319 at 1364-66; Doc. 320 at 1464-66); *Mitrovic*, 890 F.3d at 1226.

In Ground 2, Movant argues that counsel was ineffective for failing to call an expert witness who could have explained to the jury that the Bosnian Government would label Movant's forced labor as "military service" because, according to Movant, the Bosnian government would not want to have been seen as having violated the Geneva Convention.  First, as Judge Totenberg noted, it is not even clear that those articles of the Geneva Convention would apply in a non-international

---

[5]    The four Geneva Conventions apply to (1) the treatment of the wounded and sick in the armed forces in the field (6 U.S.T. 3114); (2) the treatment of the wounded, sick, and shipwrecked members of the armed forces at sea (6 U.S.T. 3217); (3) the treatment of prisoners of war (6 U.S.T. 3217); and (4) protection of civilians in times of war (6 U.S.T. 3516).

[6]    When denying the motion for judicial notice, Judge Totenberg mentioned in passing that expert testimony might have clarified whether the Geneva Convention even applied in this circumstance.  (Doc. 319 at 107).  Notably, however, Judge Totenberg indicated that any such expert testimony still would have been a challenge and it was not clear whether it would survive a *Daubert* motion.  (*Id.*).

context, that is, a civil war.[7]  *See, e.g., Hamdan v. Rumsfeld*, 548 U.S. 557, 628-31

(2006) (discussing the international nature of the Geneva Convention's application);

*United States v. Hodzic*, 335 F. Supp. 3d 825, 828 (E.D. Mo. 2019) (stating that the

Syrian civil war was a non-international armed conflict and indicating that Article 4

of the Geneva Convention did not apply); *Hamlily v. Obaa*, 616 F. Supp. 2d 63, 72

(D. D.C. 2009) (stating that Article 4 of the Geneva Convention does not apply to a

non-international conflict).

Moreover, on appeal Movant argued that the trial court erred by failing to take

judicial notice of Articles 4 and 40 of the Geneva Convention, and the Eleventh

Circuit found that:  "the Geneva Convention does not support or substantiate that the

[Bosnian government] document was false;" the evidentiary value was "minimal,"

"[t]here is substantial doubt whether the Geneva Convention even applies in these

circumstances" – *i.e.,* the Bosnian civil war; and its admission into evidence would

not have enhanced counsel's attack on the government documents during closing

arguments.  *Mitrovic*, 890 F.3d at 1226. Because the actual Geneva Convention

document would have had minimal evidentiary value and would not have

substantiated Movant's argument that the document referring to his military service

---

[7]     Only Article 3 of Geneva Convention applies to civil wars of purely domestic
nature.  *United States v. Hamidullin*, 888 F.3d 62, 67 (4th Cir. 2018); *United States
v. Hodzic*, 355 F. Supp. 3d 825, 828-29 (E.D. Mo. 2019); *Hamlily v. Obama*, 616 F.
Supp. 2d 63, 73 (D. D.C. 2009).

was false, Movant has not demonstrated that counsel was ineffective for failing to call an expert witness to testify about it.

Nor has Movant demonstrated how any such failure prejudiced him. While Movant argued that the Bosnian government falsified the certificate of recognition of Movant's military service, he did not attack the authenticity of either his application for veteran's disability benefits or the award thereof in return for his military duties in the Bosnian war. Because those documents provided Movant's own declaration that he was, in fact, in military service, they certainly belie any argument that the Convention would demonstrate that his service was actually forced labor. Moreover, the certificate recognizing Movant's military service was but a small piece of the overwhelming evidence against Movant. Finally, although Judge Totenberg did not take judicial notice of the Geneva Convention, she authorized Movant to make his argument in any event, which Movant's counsel did. (Docs. 319 at 110; Doc. 320 at 88-90). Movant, therefore, has failed to demonstrate that counsel was ineffective for failing to present expert testimony about the Geneva Convention, and he is not entitled to relief in connection with Ground 2.

c.      Failing To Raise An *Ex Post Facto* Challenge

Movant argues that counsel was ineffective for failing to raise an *ex post facto* challenge to the upward departure of his sentence based on the Sentencing Guidelines enacted after the commission of Movant's crime. In 2012, the applicable

guideline related to fraudulently acquiring naturalization and citizenship documents was amended to add Specific Offense Characteristics such as hiding military service and human rights crimes – which is precisely for what Movant was convicted.  *See* U.S.S.G. §2L2.2, Historical Note, amendment 765.  As amended, the guidelines would have increased Movant's offense level from 8 to 25, resulting in a guideline range of 57-71 months.  *See id.*; PSR at 12-13.

The Government moved for an upward departure that started with the 2001 guidelines, but then urged the Court to look to the 2012 amendment for guidance and sentence Movant to 57 months of imprisonment.  (Doc. 258 at 6-17).  At the end of the sentencing hearing, the Court  sentenced Movant to 57 months, noting that it considered the 2012 amendment as a factor when determining a reasonable sentence.  (Doc. 322 at 132-42).  Eleventh Circuit precedent forecloses Movant's argument that the Court erred in doing so and/or that counsel was ineffective for failing to object on *ex post facto* grounds.

The Eleventh Circuit specifically has approved the practice of "looking at guidelines amendments that post-date applicable guidelines for the purpose of determining the appropriate degrees of their upward sentencing departures" when sentencing a defendant.  *United States v. Logal*, 106 F.3d 1547, 1551 (11th Cir. 1997).  Indeed, in *Logal*, because the defendants' crimes for securities and other types of fraud occurred before the 1989 amendments to the Sentencing Guidelines,

they were sentenced in 1994 to pre-1989 guidelines. The 1989 amendments, however, increased the offense levels for fraud cases, and the defendants argued that the district court violated the *Ex Post Facto* Clause by looking at the 1989 amendments for guidance in determining the degree of their upward sentencing departures. *Id.* at 1549, 1551.  The Eleventh Circuit rejected the *ex post facto* claim, choosing to adopt the reasoning of decisions in the First, Second, Fifth, Seventh, Eighth, and Tenth Circuits, all of which had held that use of an amended guideline to determine a reasonable upward departure is permissible.  *Id.*

Here, the district court did precisely what the Eleventh Circuit approved in *Logal – i.e.,* it looked to subsequent guidelines to determine the reasonableness of an upward departure for Movant's crime.  As a result, any failure by counsel to argue that Movant's sentence violated the *Ex Post Facto* Clause was not deficient; nor can Movant demonstrate that he was prejudiced thereby.  *See Lockhart v. Fretwell*, 506 U.S. 364, 382 (1993) ("[I]neffective-assistance claims predicated on failure to make wholly frivolous or unethical arguments will generally be dispensed with under *Strickland*'s first prong[.]"); *Howard v. Warden*,  No. 18-14571-B, 2019 WL 1931866, at *1 (11th Cir. Mar. 29, 2019) ("Howard's post-plea counsel was not ineffective for failing to raise meritless claims."); *Harrison v. United States*, 577 F. App'x 911, 915 (11th Cir. 2014) ("In short, the failure of Harrison's appellate counsel to raise these meritless issues on appeal cannot have constituted ineffective

assistance."); *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them."). Because Movant has failed to demonstrate that counsel was ineffective, he is not entitled to relief in connection with Ground 4.

B.   Movant's Prosecutorial Misconduct Claims Are Procedurally Defaulted.

In Ground 3, Movant claims that his Sixth Amendment right to a fair trial was violated because of several instances that he claims constituted prosecutorial misconduct, specifically, because the Government: (1) solicited testimony from several witnesses who testified that Movant had marched five prisoners of war out of the camp and never were seen again, and who speculated that Movant had taken these men to their deaths even though there was no evidence to support that assumption; (2) solicited testimony from Eric Besic, another prisoner of war, that Movant had carved a cross in Besic's chest with a knife, because Besic's statement that the scar had completely healed was "uncognizable [sic]" and constituted perjured testimony about which the Government had to have been aware; and (3) presented expert witness testimony which was prejudicial to Movant's defense because it centered entirely around ethnic cleansing, torturous acts, and genocide by the Serb Army during the Bosnian civil war, that is, war crimes, for which Movant was not on trial. Movant argues that his right to a fair trial also was violated by

inaccurate translations during the trial.  Movant did not raise any of these issues in his direct appeal.

"A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not do so." *Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014). *See also Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004) ("Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a 28 U.S.C. §2255 challenge.").  The movant can "avoid the procedural bar by establishing that either of the following exceptions applies:  (1) cause and prejudice, or (2) a miscarriage of justice based on actual innocence." *Hill*, 569 F. App'x at 648.  "[T]o show cause for procedural default, [a §2255 movant] must show that some objective factor external to the defense prevented [the movant] or his counsel from raising [the] claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (per curiam).  "Actual prejudice means more than just a possibility of prejudice; it requires that the error worked to [the movant's] actual and substantial disadvantage[.]" *Ward v. Hall*, 592 F.3d 1144, 1179 (11th Cir. 2010).  To demonstrate a miscarriage of justice based on actual innocence, the movant must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Lynn*, 365 F.3d at 1234-35 (internal

quotation marks and citations omitted). A movant claiming that he is actually innocent must show factual innocence rather than legal innocence. *Rozelle v. Secretary, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012).

To the degree that this Court could construe Movant's ineffective assistance of counsel claims as cause for the procedural default of these prosecutorial misconduct claims, as discussed in Section III.A., Movant has not demonstrated any such ineffective assistance.[8] Indeed, insofar as Movant argues that he did not receive a fair trial because witnesses were allowed to speculate that Movant killed five prisoners after he marched them out of the camp and never returned, the Court specifically addressed that issue with the Government and Movant's attorney. And although Movant's attorney argued that the issue warranted a mistrial, the Court instead provided the jury with an extensive curative instruction, in which the Court

---

[8] The Court notes that to the degree that Movant now attempts to raise new ineffective assistance of counsel claims in connection with the procedurally defaulted claims for the first time in his reply, he cannot do so. *See* Rule 2(b) of the Rules Governing Section 2255 Proceedings (providing that a §2255 motion "must . . . specify all the grounds for relief available to the moving party"); *see also United States v. Sangs*, 31 F. App'x 152 (5th Cir. 2001) (affirming district court's refusal to consider issue raised for the first time in reply to the government's response to the §2255 motion); *Barnes v. United States*, No. 12-60011-CR, 2018 WL 2770171, at *12 (S.D. Fla. Mar. 28, 2018) (declining to consider issues raised for the first time in the movant's reply to the response to his §2255 motion), *report and recommendation adopted*, CV 16-62416-CIV, 2018 WL 2770125 (S.D. Fla. June 8, 2018). Nevertheless, the Court will review those ineffective assistance claims insofar as Movant relies upon them as cause for the procedural default of the prosecutorial misconduct claims.

told the jurors that they were not permitted to draw any inferences or speculate whatsoever as to what happened to the men after they left the camp.  (Doc. 316 at 68-72, 110-14, 118-20, 198-99; Doc. 317 at 8-10, 14-15).  It is not clear how Movant's attorney could have been deficient and/or that there is a reasonable probability that the result would have been different, since counsel did, in fact, ask for a mistrial after this testimony and the Court instead provided a curative instruction.

To the degree that Movant could claim that counsel was ineffective for failing to challenge the Government's subornation of perjury based on Besic's "uncognizable" claim that the scar from the cross Movant carved on Besic's chest had healed, he also has not demonstrated ineffective assistance.  Importantly, the Government did not withhold from the jury the fact that the scar had faded or healed, and Movant's attorney attacked Besic's credibility during closing arguments.  (Doc. 320 at 105).  There is no evidence whatsoever that Besic committed perjury with the Government's knowledge.  Instead, it was up to the jury to determine whether Besic's testimony was credible, and this Court cannot second guess its credibility decisions.  *See, e.g., Brown v. Sheriff of Orange County, Fla.*, 604 F. App'x 915, 916 (11th Cir. 2015) ("[T]he jury was free to believe or disbelieve Brown's testimony, and it is not for us to second-guess the jury's credibility determinations.").

Next, Movant's argument is simply wrong that the Government's expert testimony – which provided the historical context of the Bosnian conflict, including the war crimes that occurred – was irrelevant and highly prejudicial to Movant's defense because he was not on trial for any such war crimes.  To that end, Movant is correct that he was not charged with engaging in war crimes.  Movant, however, was charged with falsely representing during his citizenship proceedings that he *did not* engage in war crimes and, as part of the Government's case, it necessarily was relevant that Defendant did, in fact, engage in such acts.

The Government conducted voir dire in order to determine whether the Government's expert should be qualified as such and what testimony the Court would allow her to provide.  (Doc. 316 at 140-198).  Thereafter, the Court ruled that the expert testimony about the war would be helpful for the jury to understand, but that the expert could not testify as to any events relating to actions by guards in general – *i.e.,* the conditions that may or may not have occurred at the prison camps. (*Id.* at 198).

Despite this ruling, at the end of her testimony the expert made a reference to "horrific conditions" at the prison camps, and Movant's attorney again moved for a mistrial.  (Doc. 317 at 42-47).  While the Court ruled denied the motion, the Court did strike that reference from the record and provided another curative instruction to the jury.  (*Id.*).  In doing so, Judge Totenberg instructed the jury that the expert

testimony was presented solely for the purpose of providing them with a historical context, but that it should not be considered for any fact-finding as to any action or misrepresentation in which Movant engaged or did not engage. (Doc. 317 at 47). And when informing the jury that she was striking from the record that generic reference, Judge Totenberg emphasized that Movant was not charged with any offense relating to conditions of the prison camp. (*Id.*). Because Movant's attorney challenged the expert testimony about which Movant complains and the Court instead struck the reference from the record and provided a curative instruction, Movant has failed to show that any decision his attorney made was not reasonable or professional, and/or that he was prejudiced thereby.

Furthermore, Movant has not shown that counsel was ineffective regarding the alleged inaccurate trial translations. Indeed, several times during the trial Movant's counsel raised issues with the interpreters' translations of witness testimony, and the Court addressed those concerns and provided viable solutions – with which all parties agreed. (Doc. 316 at 15-17, 124; Doc. 317 at 55-69, 124-37; Doc. 318 at 158-61). Movant has not demonstrated that counsel was deficient in this respect; nor has he shown any prejudice thereby.

Finally, while Movant states that this Court's failure to hear all of these claims of prosecutorial misconduct would result in a miscarriage of justice, his statement is simply conclusory and he has not provided any evidence that would demonstrate

that he is factually innocent.  Because Movant has failed to demonstrate cause and prejudice, or that he is actually innocent, the Court cannot review Ground 3.

IV.  Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Mladin Mitrovic's motion to vacate his sentence [Doc. 335] be **DENIED WITH PREJUDICE**.

The Government's motion for leave to file excess pages [Doc. 337] is **GRANTED** *nunc pro tunc*.  The response filed on April 16, 2019 [Docs. 338, 339], are accepted as filed.

V.  Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere

'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant's claims are without merit and/or procedurally defaulted. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 3rd day of September, 2020.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

25